UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SECRETARY OF THE UNITED STATES
DEPARTMENT OF LABOR, *Elaine L. Chao*,

        Plaintiff,

v.

        Case Number 08-13116-BC
        Honorable Thomas L. Ludington

RICHARD P. PAYEA, *et al.*,

        Defendants.
_____ /

## ORDER GRANTING DEFENDANT INDEPENDENT BANK'S MOTION TO DISMISS, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

On July 21, 2008, Plaintiff Secretary of the United States Department of Labor ("Plaintiff") filed a complaint, alleging that Defendants violated the Employment Retirement Income Security Act ("ERISA"), codified at 29 U.S.C. §§ 1001, *et seq.* Plaintiff alleges that Defendants Richard Payea ("Defendant Payea") and Richard Payea, M.D., P.C. ("Defendant Corporation") served as the plan administrator and fiduciary for two ERISA-governed plans – the Richard P. Payea M.D., P.C. Profit Sharing Plan ("PSP") and the Richard P. Payea M.D., P.C. Money Purchase Plan ("MPP"). Deposit accounts for the plans were opened by Defendant Payea at Defendant Independent Bank ("Defendant Bank").

On March 19 and April 19, 2004, the Internal Revenue Service ("IRS") served Defendant Bank with notices of levy to satisfy unpaid taxes of Defendant Corporation. By April 30, 2004, Defendant Bank released funds from the plans' accounts to the IRS, exhausting the accounts' balance. Plaintiff contends, and Defendant Bank does not dispute, that the debt of Defendant Corporation should not have been satisfied by the assets of the PSP or the MPP. Plaintiff argues that

Defendant Bank, by reason of these transactions alone, should also be considered a fiduciary of the plans pursuant to ERISA, responsible for reimbursing the plans.

Plaintiff requests summary judgment and Defendant Bank moves to dismiss the complaint, with each motion focusing on whether Defendant Bank, as a depository bank, is a fiduciary of the PSP and the MPP under ERISA. Dkt. # 26, 34. Oral argument was conducted on May 28, 2009, and at the request of the Court, Plaintiff made a supplementary filing that included a fifty-nine page document entitled "Prototype Defined Contribution Plan and Trust/Custodial Account" a twenty-three page document entitled "Standardized Adoption Agreement Prototype Profitsharing Plan and Trust/Custodial Account," and a twenty-one page document entitled "Standardized Adoption Agreement Prototype Money Purchase Plan and Trust/Custodial Account." Dkt. # 43-2, 43-3, 43-4. So far as the Court could determine, each of the relevant 2001 reports about the plans were furnished to the Department of Labor as well as the Internal Revenue Service.

Ultimately, the Court concludes that Plaintiff has not alleged conduct that confers fiduciary status on Defendant Bank. The Court will **GRANT** Defendant Bank's motion to dismiss pursuant to Fed. R. Civ. 12(b)(6) and **DENY** Plaintiff's motion for summary judgment. In addition, Plaintiff requests that default judgment be entered against Defendants Corporation and Payea. Dkt. # 19. Neither has answered the complaint, and Plaintiff has satisfied the requirements of Fed. R. Civ. P. 55(b)(2). Thus, the Court will **GRANT** the motion for default judgment.

I

Defendant Payea owned and served as president of Defendant Corporation, a professional service corporation under Michigan law.[1] On January 1, 1992, Defendant Corporation established

---

[1] The State automatically dissolved the corporation on July 15, 2004.

and began sponsoring two prototype defined contribution employee benefit plans – the PSP and MPP. Plaintiff alleges that Defendants Corporation and Payea were parties in interest and served as fiduciaries to the plans – a proposition confirmed by the plans. Pension Service Design, Inc. ("PSDI") served as the plans' third-party administrator.

On March 25, 1997, Defendant Payea, on behalf of Defendant Corporation, opened bank accounts to maintain the plans' funds.[2] Dkt. # 18-3 at ¶ 3; dkt. # 34-3 at 3. Defendant Payea was the sole signatory to each account. Dkt. # 18-3 at ¶ 6. Plaintiff emphasizes that the complete titles of the accounts reflected on the deposit agreements were the "Richard P. Payea, M.D., P.C. Profit Sharing Plan" and the "Richard P. Payea, M.D., P.C. Money Purchase Plan." Dkt. # 34-3 at 4. Defendant Bank asserts that the terms "Profit Sharing Plan" and "Money Purchase Plan" were not utilized on any of Defendant Bank's internal documentation related to the accounts, though bank statements furnished to the medical practice for the accounts do reflect the fact that they are for each of the separate plans. Dkt. # 43-7, 43-8. Relying on the internal documents, Defendant Bank contends it was unaware that the accounts maintained funds for ERISA plans. Dkt. # 18-3 at ¶ 5.

On September 17, 2001, the final employer contribution was deposited into the plans' accounts. In October of 2002, PSDI terminated its relationship as the plans' third-party administrator because Defendant Corporation discontinued payment for services. Dkt. # 34-3 at 4. Article XII of the plan does provide that "[n]o part of the [plan] shall be used for, or diverted to, purposes other than the exclusive benefit of Participants . . . ." Dkt. # 43-2 at ¶ 12.3. The plan also provides that ["[n]o  . . . claim to . . . any part of the [plan] . . . shall be . . . subject to . . . execution,

---

[2] In 1996 or 1997, Defendant Bank acquired that a banking location in Tawas City, Michigan, owned and operated by North Bank. Dkt. # 34-3 at 3. It is unclear from the record, whether Defendant Bank controlled the bank when the accounts were opened or it took control of previously established accounts.

or levy of any kind . . . ." *Id.* at ¶12.4.  None of the affidavits furnished to the Court reflect whether any of the plans' instruments were furnished to Defendant Bank, however, it would not affect the Court's analysis even if they had been provided.

On March 19 and April 19, 2004, the IRS served two tax notices of levy on Defendant Bank to collect taxes owed by Defendant Corporation, totaling $340,117.38.  The notices of levy listed the taxpayer as "Richard P Payea MD PC," or Defendant Corporation, and also included "identifying number 38-3024083."  Dkt. # 34-3 at 13, 15.  Each notice also indicated, by way of the fact that a box was not checked on the notice, that "this levy won't attach funds in IRAs, self-employed individuals' retirement plans, or any other retirement plans in your possession or control . . . ." *Id.*

Kathleen Paeth ("Paeth"), Defendant Bank's employee, processed the levies.  *See* dkt. # 39-3.  Paeth searched Defendant Bank's computer system for accounts that corresponded with the taxpayer and identification number.  *Id.* at ¶ 4.  The computer search yielded the plans' accounts, which were only identified as accounts held by "Richard P. Payea, M.D., P.C." *Id.* at 5.  Neither account, as listed in the computer system, indicated that they were exempt from the levies.  *Id.*  According to Paeth, the only indication that the accounts contained funds related to an ERISA plan were the title identified on the accounts' signature cards, which included the terms "Profit Sharing Plan" or "Money Purchase Plan."  The signature cards, however, were maintained at another location.  *Id.* at ¶¶ 5-7.  Paeth also acknowledges that an e-mail addressing this issue indicated that one of the accounts was a "Money Purchase Plan," but contends she did not attach any significance to that term.  Dkt. # 39-3 at ¶ 8.  Notwithstanding that fact, Paeth authorized the release of the funds to the IRS, which the IRS apparently accepted without inquiry, resulting in the accounts

-4-

having a negative value.

On February 1, 2005, a participant of the PSP notified the Employee Benefits Security Administration ("EBSA") that the account maintained insufficient funds to satisfy a withdrawal request. Dkt. # 34-3 at 2. Karl Brubaker ("Brubaker"), an auditor for EBSA, investigated the solvency of the plans and discovered the satisfaction of the IRS's levies from the plans' accounts. *Id.* Brubaker recalls that Paeth indicated to him that a manager from the Tawas City branch questioned whether the accounts could be subject to the IRS levies because of their association with retirement plans. *Id.* at 5. The branch manager denies that she was aware, or informed Paeth, that the levied accounts held ERISA funds. Dkt. # 39-4 at ¶¶ 4-5. According to Brubaker, Paeth also acknowledged that her supervisor, Michael J. Stodolak, approved the release of funds to the IRS despite knowing the relationship between the accounts and the plans. Dkt. # 34-3 at 5. Paeth disputes that she told Brubaker that she understood the accounts to hold assets associated with ERISA plans. Dkt. # 39-3 at ¶ 7.

Department of Treasury regulations establish the liability of any party responding to an IRS levy. *See* 26 C.F.R. § 301.6332-1. The regulation provides that "[a]ny person who, upon demand of the district director, fails or refuses to surrender any property or right to property subject to levy is *liable in his own person* and estate in a sum equal to the value of the property or rights not so surrendered, together with costs and interest."[3] *Id.* § 301.6332-1(b)(1) (emphasis added). Further, a person that does not surrender property "without reasonable cause" is subject to an additional fifty percent penalty. *Id.* § 301.6332-1(b)(2). In contrast, the regulation limits liability to the taxpayer

---

[3] The regulation defines a "person" as "an officer or employee of a corporation or a member or employee of a partnership, who is under a duty to surrender the property or rights to property or to discharge the obligation." *Id.* § 301.6332-1(d).

in the event that the person surrenders property not subject to levy if the person "makes a good faith determination" that "the delinquent taxpayer [had] an apparent interest in the property." *Id.* § 301.6332-1(c)(2).

On February 22, 2005, EBSA contacted the IRS seeking to recover the funds. Dkt. # 34 at 5. The IRS denied the request, asserting that the nine-month statute of limitations for the return of the funds had expired. *Id.*; *see* 28 U.S.C. § 7426. While not immediately relevant to the application of the regulation, it is noteworthy that the IRS was in receipt of the 2001 "Form 5500 Annual Return and Report of Employee Benefit Plan" prepared for both the PSP and the MPP. Those forms identified Richard P. Payea of East Tawas, Michigan, with the "Trust Employer Identification Number 38-3024083" as the plans' trustee and Richard P. Payea M.D., P.C. 1195 Tawas Beach Road, East Tawas, Michigan as the plans' sponsor.

In any event, the amended complaint alleges that Defendant Bank "was, and acted as, a fiduciary within the meaning of ERISA with respect to the Plans by virtue of its control over the disposition of the Plans' assets to the U.S. Department of Treasury's [IRS] to pay the tax debts of the corporation.[Defendant Bank] is also a party in interest to the Plans within the meaning of ERISA." Dkt. # 23 at ¶ 8 (citations omitted). In contrast, Defendant Bank asserts that it served as a depository bank for the plans at the election of the plans' administrator and fiduciary, and denies serving as a fiduciary, third-party administrator, or trustee for the plans. Dkt. # 26-2 at ¶¶ 5-8. It contends that it never "exercise[d] any undirected authority and control over the [p]lans' assets," provided investment advice, or retained any discretionary authority or responsibility over the plans. *Id.* at ¶ 9, dkt. # 18-3 at ¶¶ 7-9. Rather, Defendant Bank asserts that it only served as a depository bank for the plans.

II

Defendant Bank's motion seeks relief pursuant to Fed. R. Civ. P. 12 and 56. While portions of the record are discussed, the motions focus on the allegation that, under ERISA, a depository bank may become a fiduciary to a plan by the single act of negligently withdrawing funds from a plan's account. Consequently, review under Fed. R. Civ. P. 56 is premature. It is appropriate to address that question of law under the standard set forth in Fed. R. Civ. P. 12(b)(6), which directs the dismissal of claims that do not "state a claim upon which relief can be granted." Notwithstanding the applicable standard of review, the parties agreed that the Court could consider the supplemental exhibits filed at the Court's direction and were not matters "outside the pleadings" within the meaning Fed. R. Civ. P. 12(d).

"The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). When deciding a motion under that Rule, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996). "However, while liberal, this standard of review does require more than the bare assertion of legal conclusions." *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). "In practice, 'a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (quoting *Scheid v. Fanny Farmer Candy Shops*, *Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)). *See also Ana Leon*

*T. v. Federal Reserve Bank*, 823 F.2d 928, 930 (6th Cir. 1987) (per curiam) (mere conclusions are not afforded liberal Rule 12(b)(6) review), *cert. denied*, 484 U.S. 945 (1987).

III

ERISA holds a fiduciary personally liable for a breach of any duty or responsibility. 29 U.S.C. § 1109(a). Under ERISA, a fiduciary is defined as follows:

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). When determining if a party is a fiduciary under ERISA, the Sixth Circuit utilizes a "functional test," evaluating the "terms of control and authority over the plan." *Briscoe v. Fine*, 444 F.3d 478, 486 (6th Cir. 2006) (quoting *Hamilton v. Carell*, 243 F.3d 992, 998 (6th Cir. 2001)). A distinction exists between a party that exerts "management or administration of the plan" versus a party that effectuates a "mere[] business decision that has an effect on an ERISA plan." *Hamilton*, 243 F.3d at 998 (quoting *Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 718 (6th Cir. 2000)). "Only discretionary acts of plan management or administration, or those acts designed to carry out the very purposes of the plan, are subject to ERISA's fiduciary duties." *Id.* (quoting *Akers v. Palmer*, 71 F.3d 226, 231 (6th Cir. 1995)).

In *Briscoe*, the court evaluated whether the party "exercised *discretionary* authority over plan management, or *any* authority or control over plan assets." 444 F.3d at 486 (citing 29 U.S.C. § 1002(A)(21)) (emphasis in original). In the present case, the complaint does not allege that Defendant Bank managed the plan, thus, it is irrelevant whether it retained any discretionary

authority. *See id.* at 491. Rather, the functional test, as applied in this circumstance, evaluates Defendant Bank's exercise of "any authority or control over plan assets." *Id.* In short, a lower threshold exists "for acquiring fiduciary responsibilities . . . for persons or entities responsible for the handling of plan assets than for those who manage the plan." *Id.* (citing *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993)).

Plaintiff emphasizes that a party that exercises *any* control or authority over a plan's assets is a fiduciary under ERISA. Dkt. # 34 at 8-9 (citing *Briscoe*, 444 F.3d at 490-91). Indeed, that court found a fiduciary status existed by virtue of a former plan administrator's conduct "as a signatory and unilaterally disposed of the remaining funds." *Id.* at 492. *Briscoe* found the circumstances in *Smith v. Provident Bank*, 170 F.3d 609, 613 (6th Cir.1999) to be instructive, summarizing that case as follows:

> In [*Smith*], a participant in ERISA-covered pension and profit-sharing plans instructed the defendant bank, which was the trustee for the plans, to purchase 1,000 shares of stock on his behalf. Two weeks after the bank was removed as trustee for the plan, the bank corrected its failure to purchase the same amount and type of stock for another client by removing the previously bought shares from the participant's account. Although the value of those shares had increased substantially in the intervening period, the bank credited the participant's account only for the original purchase price of the stock, minus dividends that the participant had already received. In deciding whether the participant's state-law claim for breach of fiduciary duty was preempted, this court held that the bank acted as an ERISA fiduciary when it removed the shares from the participant's account. The bank retained its fiduciary status even after being removed as trustee because it still "exercised control over plan assets" by removing such assets from a participant's account and then replacing those assets with a monetary sum of lesser value.

*Id.* Similarly, the *Briscoe* court concluded that a fiduciary relationship between the participants and former plan administrator existed because the plan administrator "continued to receive COBRA payments from plan participants and controlled a small amount of funds previously received from the Company." *Id.* at 492.

These cases are distinguishable from the present circumstance. The *Briscoe* and *Smith* courts were confronted with a situation where the defendants had previously been plan fiduciaries, terminated that relationship, and, thereafter, affirmatively acted to reestablish its fiduciary status – the circumstance in the present case is distinct. Plaintiff argues that Defendant Bank's conduct in attempting to comply with the IRS levy created a fiduciary relationship. The Court respectfully disagrees that Defendant Bank's efforts to lawfully comply with the IRS levy constitutes the exercise of a discretionary authority over plan management of plan assets within the meaning of 29 U.S.C. § 1002(A)(21).

Indeed, a more analogous set of facts occurred in *Reichling v. Cont'l Bank*, 813 F.Supp. 197 (E.D.N.Y. 1993). There, in response to an execution served upon it by local law enforcement, a depository bank transferred funds held in an account containing assets of an ERISA plan. *Id.* at 197. The trustee sought to hold the depository bank liable as a fiduciary to the plan. *Id.* The court disagreed with the trustee, reasoning that "a mere depository or lender to a trust fund" is not a fiduciary because it does not exercise discretion over the plan assets. *Id.* at 198 (citing *O'Toole v. Arlington Trust Co.*, 681 F.2d 94, 96 (1st Cir. 1982)).

While Plaintiff emphasizes that discretion is irrelevant when an entity controls plan assets, a withdrawal from an account believed to be required by law does not rise to the level of authority or control as contemplated in the statute. If funds maintained in a deposit account satisfied the "control over plan assets" criteria, then mere possession of plan accounts would create a fiduciary duty and transform every depository bank maintaining an account with ERISA funds into a fiduciary. Indeed, other courts have required conduct beyond mere possession of funds before finding a fiduciary relationship for exercising "control or authority" over plan assets. *See Chao v.*

*Day*, 436 F.3d 234 (D.C. Cir. 2006).  In that case, an agent solicited assets from ERISA plans for purpose of obtaining insurance but converted the assets for personal use.  *Id.* at 235.  The insurance agent was found to be a fiduciary because he "was far more than a mere custodian; he was a broker who solicited, accepted, and then pilfered the plans' assets by reneging on his promise to purchase insurance for the plans' members."  *Id.* at 237-38.  The Court emphasized that 29 U.S.C. § 1002(21)(A)(i) does not "extend fiduciary status to every person who exercises 'mere possession, or custody' over the plans' assets.  *Id.* at 237.  Here, Defendant Bank's compliance with a tax levy that it was legally bound to respond to does not demonstrate "sufficient" control or authority over the plans' assets to conclude that it was a fiduciary to the plans.

IV

In addition, Plaintiff moves for default judgment pursuant to Fed. R. Civ. P. 55(b)(2) with respect to Defendants Payea and Corporation.  Dkt. # 19.  On August 20, 2008, Plaintiff personally served each party, but neither answered the complaint.  Dkt. # 7,8.  Plaintiff requests that the Court enter a default judgment that (1) finds Defendants Payea and Corporation liable for the levied amount and other proceeds they owe to the plan,[4] (2) enjoins Defendants Payea and Corporation from serving as fiduciaries of any ERISA plan, and (3) appoints North American Pension Services, L.L.C. as an independent fiduciary and establishes its fiduciary duties.

Fed. R. Civ. P. 55(b)(2) provides as follows:

In all other cases the party entitled to a judgment by default shall apply to the court therefor; but no judgment by default shall be entered against an infant or incompetent

---

[4] Plaintiff contends that Defendants Payea and Corporation must restore the following amounts that were utilized to satisfy the IRS levies:  $46,364.53 plus $18,459.88 interest to the PSP and $86,446.66 plus $34,550.97 interest to the MPP.  Plaintiff further contends that they must reimburse the plan for the period of nonpayment and pay $40,669.40 in employer contributions plus $17,747.27 in lost opportunity costs and interest. The total amount, $244,238.71, while less than the amount levied by the IRS from the plans' accounts, represents the amount due to participants other than Defendant Payea personally.

-11-

>person unless represented in the action by a general guardian, committee, conservator, or other such representative who has appeared therein. If the party against whom judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application.  If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by any statute of the United States.

Plaintiff's motion sets forth the legal basis to find Defendants liable.  Moreover, an affidavit by the auditor for the EBSA, Brubaker, sets forth a basis to calculate damages and determine other appropriate relief.  Plaintiff has met the requirements for Rule 55(b)(2) and the Court will grant the motion.

V

Accordingly, it is **ORDERED** that Defendant Independent Bank's motion to dismiss [Dkt. # 26]  is **GRANTED**.

It is further **ORDERED** that Plaintiff's motion for summary judgment [Dkt. # 34] and Defendant Independent Bank's motion for summary judgment are **DENIED** as moot.

It is further **ORDERED** that Plaintiff's motion for default judgment [Dkt. # 19] is **GRANTED**.

                                            s/Thomas L. Ludington
                                            THOMAS L. LUDINGTON
                                            United States District Judge

Dated: July 9, 2009

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 9, 2009.

          s/Tracy A. Jacobs
          TRACY A. JACOBS